Slip Op. 07-176

## UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————
                           :

NSK CORPORATION, *et al.*,      :
                           :
        Plaintiffs,       :
                           :
    and                  :
                           :
FAG ITALIA SpA, *et al.*,      :
                           :
        Plaintiff-Intervenors,  :
                           :    Before: Judith M. Barzilay, Judge.
    v.                  :    Consol. Court No. 06-00334
                           :
UNITED STATES,         :
                           :
        Defendant,      :
                           :
    and                  :
                           :
THE TIMKEN COMPANY,   :
                           :
        Defendant-Intervenor.  :
———————————————————:

## OPINION

*Crowell & Moring, LLP*, (*Matthew P. Jaffe*), *Robert A. Lipstein*, *Alexander H. Schaefer*, and *Sobia Haque*; *Sidley Austin, LLP*, *Neil R. Ellis* and *Jill Caiazzo* for Plaintiffs.

*Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP*, (*Max F. Schutzman*), *Adam M. Dambrov*, and *William F. Marshall*; *Steptoe & Johnson, LLP*, *Herbert C. Shelley*, *Alice A. Kipel*, and *Susan R. Gihring* for Plaintiff-Intervenors.

*Jeffrey S. Bucholtz*, Assistant Attorney General; (*Mark B. Rees*), *David A.J. Goldfine*, *James M. Lyons*, and *Neal J. Reynolds*, Office of the General Counsel, United States International Trade Commission.

*Stewart and Stewart*, (*Eric P. Salonen*), *Geert De Prest*, *Elizabeth A. Argenti*, and *Terence P. Stewart* for Defendant-Intervenor.

December 10, 2007

[Motion for preliminary injunction granted.]

   **BARZILAY, Judge**:  Plaintiffs NSK Corporation, NSK Ltd., and NSK Europe Ltd.

(collectively, "NSK"), move this court for a preliminary injunction to: (1) enjoin U.S. Customs

and Border Protection ("Customs") from liquidating entries of ball bearings (and parts thereof)

imported during the eighteenth period of review ("POR") (May 1, 2006 through April 30, 2007);

and (2) order the U.S. Department of Commerce ("Commerce") to instruct Customs to suspend

liquidation of said entries pending judicial review of the underlying litigation.  *See* USCIT Rule

65.  Defendant-Intervenor Timken Company ("Timken"), is the only party that opposes

Plaintiff's motion.  Defendant United States (the "Government"), takes no position in this matter.

Mot. TRO & Prelim. Inj.  The court has jurisdiction over this case pursuant to 28 U.S.C.

§ 1581(c), and may review Plaintiffs' motion for a preliminary injunction pursuant to 19 U.S.C.

§ 1516a(c)(2).  The court finds that Plaintiffs would be irreparably harmed and have a sufficient

likelihood of success on the merits, and therefore grants their motion for a preliminary

injunction.

## BACKGROUND

   Since 1989, NSK[1] has imported and produced ball bearings that are subject to an

antidumping order.  *See Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings,*

*and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany,*

*France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom*, 54 Fed.

---

   [1] NSK Corporation is a U.S. corporation that produces ball bearings domestically and imports ball bearings from its sister companies NSK Ltd., a Japanese corporation, and NSK Europe Ltd., a British corporation.  NSK Ltd. is a party to the above captioned case, while NSK Europe Ltd. is a party to Court No. 06-0036, which has been consolidated with this case pursuant to USCIT Rule 42(a).

Reg. 20,900-911 (Dep't Commerce May 15, 1989) ("*AD Order*"); *Continuation of Antidumping*

*Duty Orders: Certain Bearings From France, Germany, Italy, Japan, Singapore, the United*

*Kingdom, and the People's Republic of China*, 65 Fed. Reg. 42,665 (Dep't Commerce July 11,

2000).  On June 1, 2005, the International Trade Commission ("ITC") automatically initiated a

second five-year sunset review of the *AD Order* pursuant to section 751(c) of the Tariff Act of

1930, as amended by 19 U.S.C. § 1675(c), covering the same class of ball bearings that NSK

Corporation imports from its sister companies in Japan and the United Kingdom.[2]  *See Certain*

*Bearings From China, France, Germany, Italy, Japan, Singapore, and the United Kingdom*, 70

Fed. Reg. 31,531 (ITC June 1, 2005); *see also* § 1675(c).  After finding sufficient participation

among interested parties, the ITC commenced a full sunset review in accordance with 19 U.S.C.

§ 1675(c)(5).  *See Certain Bearings From China, France, Germany, Italy, Japan, Singapore,*

*and the United Kingdom*, 70 Fed. Reg. 54,568 (ITC Sept. 15, 2005).  Approximately one year

later, the ITC concluded that revocation of the *AD Order* would likely lead to a continuation or

reoccurrence of material injury to the domestic industry.  *See Certain Bearings From China,*

*France, Germany, Italy, Japan, Singapore, and the United Kingdom: Investigation Nos. 731-TA-*

*344, 391-A, 392-A and C, 393-A, 394-A, 396, and 399-A (Second Review)*, 71 Fed. Reg. 51,850

(ITC Aug. 31, 2006) ("*Final Results*")

    In the underlying litigation, NSK challenges the *Final Results* of the second sunset

review pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U S.C.

§ 1516a(a)(2)(B)(iii).  Compl. 3-7.  As an interested party from the domestic industry, Timken

---

[2] For a concise legal history and explanation of sunset reviews, see *NMB Sing. Ltd. v. United States*, 24 CIT 1239, 1240-41, 120 F. Supp. 2d 1134, 1137-38 (2000) ("*NMB*").

did not initiate an administrative review for entries made during the eighteenth POR.  *See* 19

U.S.C. §§ 1516a(a)(2) & 1677(9); *see also* § 1675(a).  NSK Ltd. and NSK Europe Ltd., however,

requested an administrative review of the subject entries, but subsequently withdrew their

request, thereby causing Commerce to partially rescind its review.  *See Ball Bearings and Parts*

*Thereof from France, Germany, Italy, Japan, and the United Kingdom: Notice of Partial*

*Rescission of Antidumping Duty Administrative Reviews*, 72 Fed. Reg. 64,577 (Dep't Commerce

Nov. 16, 2007).  Since the administrative review was terminated, NSK's entries remain subject

to the *AD Order* and would normally be liquidated at the "rate established in the completed

review covering the most recent prior period or, if no review has been completed, the cash

deposit rate applicable at the time merchandise was entered."  19 C.F.R. § 351.212(a) & (c); *see*

*also NMB*, 24 CIT at 1240, 1241-42, 120 F. Supp. 2d at 1136, 1138.  Accordingly, NSK has filed

this application for a preliminary injunction to suspend liquidation of said entries pending

judicial review of its challenge to the second sunset review.

## DISCUSSION

To obtain a preliminary injunction prior to trial, the movant must demonstrate (1) that the

movant is likely to succeed on the merits at trial; (2) that it will suffer irreparable harm if

preliminary relief is not granted; (3) that the balance of the hardships tips in the movant's favor;

and (4) that a preliminary injunction will not be contrary to the public interest.  *See FMC Corp.*

*v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).  "No one factor, taken individually, is

necessarily dispositive," *Id*., but if the movant "makes a strong showing of irreparable injury it

faces a lesser burden in proving likelihood of success on the merits, and *vice versa*." *Sandoz*

*Chems. Corp. v. United States*, 17 CIT 1061, 1063 (1993) (not reported in F. Supp.) (citing *Am.*

*Air Parcel Forwarding Co. v. United States*, 1 CIT 293, 300, 515 F. Supp. 47, 53 (1981)).  "As a

basic proposition, the matter lies largely within the sound discretion of the [court]."  *FMC Corp.*,

3 F.3d at 427 (citations omitted).

*A. Irreparable Harm*

NSK claims that they will suffer irreparable harm if the subject entries are liquidated

prior to the final disposition of this case.  Specifically, NSK argues that if the court does not

issue a preliminary injunction, their entries for the eighteenth POR will be assessed antidumping

duties by operation of law.  Pl. Br. 4; *see* 19 C.F.R. § 351.212(a) & (c).  Moreover, NSK

contends that if their motion is denied, this court cannot provide a meaningful remedy in the

underlying litigation because a favorable judgment would result in prospective relief only and

therefore have no effect on entries that have already been liquidated.  Pl. Br. 4.  In opposition to

Plaintiff's motion, Timken argues that a claim challenging the final results of a sunset review

carries a different evidentiary burden, with respect to satisfying the element of irreparable harm,

than similar claims involving administrative reviews.  Timken relies on *Altx, Inc. v. United*

*States*, 26 CIT 735, 211 F. Supp. 2d 1378 (2002) ("*Altx*"), for the proposition that liquidation of

actual entries constitutes some harm, but does not amount to irreparable harm, nor does it

preclude the court from providing a meaningful remedy since a claimant's prospective entries

may benefit from a favorable judgment.  Def.-Int. Br. 3-5; *see Altx*, 26 CIT at 737, 211 F. Supp.

2d at 1380-81; *Neenah Foundry Co. v. United States*, 24 CIT 33, 39-40, 86 F. Supp. 2d 1308,

1314 (2000) ("*Neenah*").  This argument lacks merit.

The issue of irreparable harm in the context of a sunset review has been addressed in past cases and there is no question that NSK will suffer such harm if the subject entries are liquidated prior to the final disposition of this case.  *See NMB*, 24 CIT at 1243-44, 120 F. Supp. 2d at 1139-40; *see also Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (1983).  As the Federal Circuit has observed, "the antidumping laws do not contain a provision permitting the reliquidation of entries or the recovery of wrongfully assessed antidumping duties in the event a foreign manufacturer or exporter successfully challenges an affirmative antidumping determination."  *NMB*, 24 CIT at 1243, 120 F. Supp. 2d at 1139 (citing *Zenith Radio Corp.*, 710 F.2d at 810); *see* 19 U.S.C. § 1516a(c)(1).  Here, NSK faces the same dilemma challenging a five-year sunset review determination as it would in an annual administrative review.  The subject entries in this case fall within a discrete time period and "because the antidumping order remains in effect, and because the liquidation of entries is not suspended during the pendency of the Plantiffs' legal challenge, the Plaintiffs are faced with potential irreparable harm *similar to that faced by parties challenging an administrative review determination* in the absence of injunctive relief."  *NMB*, 24 CIT at 1244, 120 F. Supp. 2d at 1140 (emphasis added).  Although sunset reviews cover a broader period of time, the dispositive factor is whether NSK can obtain meaningful relief if they prevail in the underlying litigation absent a preliminary injunction to enjoin liquidation of past entries that are subject to the *AD Order*.  In *NMB*, the court explained that,

> if [Customs] liquidates the subject entries prior to the completion of final judicial
> review and the antidumping order is subsequently revoked, the [p]laintiffs would
> be without recourse to recover the wrongfully paid antidumping duties.  For
> judicial review to be meaningful, it must be capable of providing a party with
> effective relief and the ability to enforce its rights.  Absent a preliminary
> injunction suspending liquidation, judicial review could not provide the
> [p]laintiffs with meaningful relief.  Any judicial remedy would be fruitless.

*Id*.  This is precisely the type of harm NSK could suffer if the subject entries are liquidated prior

to resolution of the underlying litigation.

Timken's reliance on *Altx* is misplaced, as that case was brought by members of the

domestic industry to challenge an injury determination.  *See Altx*, 26 CIT at 736, 211 F. Supp. 2d

at 1379; *see also Neenah*, 24 CIT at 38-40, 86 F. Supp. 2d at 1313-15 ; *FMC Corp.*, 3 F.3d at

425-26.  Unlike cases in which past entries are at issue, "a negative injury determination affects

liquidation of all future entries, not just those made within a specific time period."  *Sandoz*

*Chems. Corp.*, 17 CIT at 1063 (citation omitted).  As a result, "liquidation of entries alone does

not constitute irreparable harm in a challenge brought by a domestic producer to a negative

injury or a less-than-fair value determination."  *Trent Tube Div., Crucible Materials Corp. v.*

*United States*, 14 CIT 587, 588, 744 F. Supp. 1177, 1179 (1990).   Although the domestic

producer may "suffer harm through continued liquidation of [the importer's] entries, this

potential harm is not irreparable because [the domestic producer] will still have the possibility of

prospective relief in regard to future entries . . . if they are successful on the merits of their case."

*FMC Corp.*, 3 F.3d at 430 (quoting *FMC Corp. v. United States*, 16 CIT 378, 381, 792 F. Supp.

1285, 1288 (1992)).  To demonstrate irreparable harm in the context of an injury determination,

the domestic producer may not rely on liquidation alone, but must present "additional evidence

of immediate irreparable harm in order to prevail on their motion." *Id*.

Based on Plaintiffs' complaint and moving papers, they are primarily concerned with past entries and their ability to obtain relief if Customs is permitted to liquidate their imports. *See Neenah*, 24 CIT at 39 & n.5, 86 F. Supp. 2d at 1314. Further, there is no mention of future injury in Plaintiffs' motion that might modify the evidentiary requirements necessary to establish irreparable harm. *See Trent Tube Div.*, 14 CIT at 588, 744 F. Supp. at 1179. Therefore, Plaintiffs have properly demonstrated that they will suffer irreparable harm if their motion is denied.

## B. Likelihood of Success on the Merits

As previously mentioned, "although this requirement is important, it is not determinative and must be balanced against the comparative injuries of the parties." *NMB*, 24 CIT at 1244, 120 F. Supp. 2d at 1140. This "balancing involves an inverse relationship between the level of hardship the moving party will suffer if the preliminary injunction is denied and the standard that must be met to demonstrate a likelihood of success on the merits." *Id*. at 1245. Where it is "clear that the moving party will suffer substantially greater harm by the denial of the preliminary injunction than the non-moving party would by its grant, it will ordinarily be sufficient that the movant has raised '*serious, substantial, difficult and doubtful*' questions that are the proper subject of litigation." *Id*. (quoting *PPG Indus. v. United States*, 11 CIT 5, 8 (1987) (not reported in F. Supp.)) (emphasis added).

Plaintiffs challenge the final results of the second sunset review in which the ITC concluded that revocation of the *AD Order* covering certain ball bearings would likely lead to a

reoccurrence of material injury to the domestic industry.  As Plaintiffs will suffer far greater

harm than that suffered by Defendants if their motion is denied, they need only present questions

that are serious, substantial, difficult, and doubtful to establish a likelihood of success on the

merits.  In Plaintiffs' complaint and motion for judgment on the agency record, they set forth

several claims that question whether the ITC applied the proper legal standards in making its

determination.  Claims of this nature are routinely considered by this Court and present serious

and substantial legal questions.  Although limited to five pages, Timken has not raised a specific

legal issue in its brief that compels the court to seriously question the merits of Plaintiffs' claim

to the same degree as was necessary in *Corus Staal BV v. United States*, 31 CIT __, 493 F. Supp.

2d 1276 (2007).  Therefore, NSK has established a sufficient likelihood of success based on the

lesser burden outlined above.

*C. Balance of Hardships & Public Interest*

        With regard to elements (3) and (4), the court believes it unnecessary to explore these

issues in great detail because the balance of hardships and public interest clearly favor Plaintiffs.

 If the court denies Plaintiffs' motion, they "would suffer the potential unrecoverable loss of all

antidumping duties paid on the liquidated entries and the negation of their statutory right to

meaningful judicial review."  *NMB*, 24 CIT at 1244, 120 F. Supp. 2d at 1140.  The Government,

however, takes no position in this matter and therefore does not suffer any hardship for purposes

of this analysis.  Again considering page limitations, Timken has not submitted evidence that it

will suffer undue hardship if the preliminary injunction is granted.  Similarly, "preserving

[NSK's] right to meaningful judicial review" serves the public interest and does not undermine

other policies of equal or greater weight.  *Id*. at 1245, 120 F. Supp. 2d at 1141.  Consequently,

neither of these two elements operate as barrier to granting the preliminary injunction.

**CONCLUSION**

For the foregoing reasons, the court is convinced that Plaintiffs have properly established

the necessary criteria to obtain a preliminary injunction.  Accordingly, Plaintiffs' motion is

**GRANTED**.

Dated: <u>December 10, 2007</u>                                     /s/ Judith M. Barzilay
        New York, N.Y.                                          Judge Judith M. Barzilay

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____

Deputy Clerk