Slip Op. 08-21

UNITED STATES COURT OF INTERNATIONAL TRADE

---------------------------------------------

NSK CORPORATION, *et al.*,

    Plaintiffs,

and

FAG ITALIA SpA, *et al.*,

    Plaintiff-Intervenors,

v.

UNITED STATES,

    Defendant,

and

THE TIMKEN COMPANY,

    Defendant-Intervenor.

---------------------------------------------

Before: Judith M. Barzilay, Judge
Consol. Court No. 06-00334

OPINION

[Motion for preliminary injunction denied in part and granted in part.]

Dated: February 15, 2008

*Crowell & Moring, LLP*, (*Matthew P. Jaffe*), *Robert A. Lipstein*, *Alexander H. Schaefer*, and *Sobia Haque*; *Sidley Austin, LLP*, *Neil R. Ellis* and *Jill Caiazzo* for Plaintiffs.

*Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP*, (*Max F. Schutzman*), *Adam M. Dambrov*, and *William F. Marshall*; *Steptoe & Johnson, LLP*, *Herbert C. Shelley*, *Alice A. Kipel*, and *Susan R. Gihring* for Plaintiff-Intervenors.

*Jeffrey S. Bucholtz*, Acting Assistant Attorney General; (*Claudia Burke*), Commercial Litigation Branch, Civil Division, United States Department of Justice; (*Mark B. Rees*), *David A.J. Goldfine*, *James M. Lyons*, and *Neal J. Reynolds*, Office of the General Counsel, United States International Trade Commission for Defendant, United States.

*Stewart and Stewart*, (*Eric P. Salonen*), *Geert De Prest*, *Elizabeth A. Argenti*, and *Terence P. Stewart* for Defendant-Intervenor.

      **BARZILAY, JUDGE**: On December 10, 2007, this court granted Plaintiffs' motion for a preliminary injunction to suspend liquidation of their entries of ball bearings from the United Kingdom and Japan over the objection of Defendant-Intervenor, The Timken Company. *See NSK Corp. v. United States*, 31 CIT __, Slip Op. 07-176 (Dec. 10, 2007) (not reported in F. Supp.). Now Plaintiff-Intervenors FAG Italia SpA, Schaeffler Group USA, Inc., Schaeffler KG, The Barden Corporation (U.K.), Ltd., and The Barden Corporation (collectively, "Schaeffler"), move this court for a preliminary injunction to: (1) enjoin U.S. Customs and Border Protection ("Customs") from liquidating entries of ball bearings (and parts thereof) imported from Italy, Germany and the United Kingdom during the eighteenth period of review ("POR") (May 1, 2006 through April 30, 2007); and (2) order the U.S. Department of Commerce ("Commerce") to instruct Customs to suspend liquidation of said entries pending judicial review of the underlying litigation. *See* USCIT Rule 65. This motion is opposed by Defendant, the United States. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1581(c), and may review Schaeffler's motion for a preliminary injunction pursuant to 19 U.S.C. § 1516a(c)(2). Because Plaintiffs did not contest injury determinations covering merchandise from Italy and Germany in their original claim, Schaeffler's motion for a preliminary injunction is denied in part and granted in part.

## I. BACKGROUND

      On June 1, 2005, the U.S. International Trade Commission (the "ITC") initiated a second five-year review, pursuant to section 751(c) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(c), to determine whether revocation of the antidumping duty orders on certain ball

bearings from China, France, Germany, Italy, Japan, Singapore, and the United Kingdom would be likely to lead to continuation or recurrence of material injury.  *See Certain Bearings from China, France, Germany, Italy, Japan, Singapore, and the United Kingdom*, 70 Fed. Reg. 31,531 (ITC June 1, 2005); *see also Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom*, 54 Fed. Reg. 20,900-911 (Dep't Commerce May 15, 1989) ("*AD Orders*"); *Continuation of Antidumping Duty Orders: Certain Bearings From France, Germany, Italy, Japan, Singapore, the United Kingdom, and the People's Republic of China*, 65 Fed. Reg. 42,665 (Dep't Commerce July 11, 2000).  Approximately one year later, the ITC issued its final decision and concluded that revocation of the antidumping duty orders on ball bearings from, *inter alia*, Italy, Japan, Germany, and the United Kingdom, would be likely to lead to the continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time.  *See Certain Bearings from China, France, Germany, Italy, Japan, Singapore, and the United Kingdom; Investigation Nos. 731-TA-344, 391-A and C, 393-A, 396 and 399-A (Second Review)*, 71 Fed. Reg. 51,850 (ITC Aug. 31, 2006) ("*Final Results*").  After Plaintiffs commenced the underlying action challenging the *Final Results* of the second sunset review, Schaeffler intervened as a matter of right.  *See* 28 U.S.C. § 2631(j)(1)(B); USCIT R. 24.

     Since Commerce's periodic administrative review of the subject entries was never completed, Schaeffler's entries for the eighteenth POR remain subject to antidumping duties and would normally be liquidated at a "rate established in the completed review covering the most recent prior period or, if no review has been completed, the cash deposit rate applicable at the

Consol. Court No. 06-00334                                                                                    Page 4

time merchandise was entered." 19 C.F.R. § 351.212(a) & (c); *see NMB Sing. Ltd. v. United States*, 24 CIT 1239, 1240, 1241-42, 120 F. Supp. 2d 1134, 1136, 1138 (2000); *see also Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, and the United Kingdom: Notice of Partial Rescission of Antidumping Duty Administrative Reviews*, 72 Fed. Reg. 64,577 (Dep't Commerce Nov. 16, 2007). Accordingly, Schaeffler has filed this application for a preliminary injunction to suspend liquidation of said entries during the pendency of the underlying litigation.

## II. DISCUSSION

### A. Enlargement of the Action

Before undertaking the traditional four-part analysis of factors necessary to secure a preliminary injunction, the court must first address whether it has jurisdiction to suspend liquidation of the subject entries. Defendant argues that as a mere intervenor, Schaeffler is not entitled to a preliminary injunction on any of its entries because it did not file a summons and complaint within the statutorily required time period and thus, may only intervene in support of Plaintiffs' claim. Commerce Br. 3-4; ITC Br. 4-5. Defendant further contends that suspending liquidation of Schaeffler's entries would enlarge the scope of the litigation by adding new entries to those already designated for review in the original complaints. Commerce Br. 4-5; ITC Br. 5-7. In advancing these arguments, Defendant relies on the recent opinion *Laizhou Auto Brake Equip. Co. v. United States*, 31 CIT __, 477 F. Supp. 2d 1298 (2007) ("*Laizhou*"). Commerce Br. 3-4; ITC Br. 5-6. The court, however, is convinced that the analysis in *Laizhou* misconstrues the cases it relies upon for support.

In *Laizhou*, a Chinese exporter intervened in a case to challenge the final results of an

administrative review on automotive brake rotors from China, and sought a preliminary injunction to suspend liquidation of its entries pending judicial review. The Court denied the motion, citing *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944) and *Torrington Co. v. United States*, 14 CIT 56, 59, 731 F.Supp. 1073, 1076 (1990) ("*Torrington*") for the proposition that granting such a motion would improperly enlarge the issues beyond the scope of the original litigation. *See Laizhou*, 31 CIT at __, 477 F. Supp. 2d at 1300-01. Notably, both the plaintiff and plaintiff-intervenor sought judicial review of an administrative determination covering merchandise from China.[1] *See id*. at __, 477 F. Supp. 2d at 1299. The rationale provided in *Laizhou* for denying the intervenor's preliminary injunction overlooks essential distinctions in the cases it relies upon for support and consequently applies the principle of enlargement too broadly.

As in *Laizhou*, Defendant cites *Vinson* only for the basic principle that "an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson*, 321 U.S. at 498. *Vinson*, a Supreme Court case from 1944, is factually distinguishable and therefore of minimal value in determining whether a plaintiff-intervenor in an ITC injury determination is entitled to a preliminary injunction. The petitioner-intervenor in that case sought review of a rate order issued by the Public Utilities Commission of the District of Columbia during World War II. As the Supreme Court characterized the case in its opinion:

---

[1] Unlike the intervenor in *Laizhou*, however, Schaeffler is challenging determinations that cover both the same and *different countries* than those designated in Plaintiffs' complaints. In other words, Schaeffler is seeking the same judicial remedy for its entries from Italy, Germany, and the United Kingdom as is requested by Plaintiffs for entries from Japan and the United Kingdom.

Consol. Court No. 06-00334                                                                                          Page 6

> Thus it appears that the controversy is essentially one between two governmental agencies as to whether the powers of the one or the other are preponderant in the circumstances.
>
> In view of the petitioners' insistence that they were entitled, in effect, to control and direct the inquiry without regard to the statutory powers of the Commission, we shall first examine the extent of the authority conferred upon petitioners by Congress.

*Vinson*, 321 U.S. at 497. The Supreme Court then went on to analyze the Emergency Price Control Act of 1942 to determine whether it conferred a right of intervention. The Court did not find that the Act clearly conferred such a right. It then went on to conclude:

> If the petitioners were admitted as intervenors by a state commission, or by the District Commission, which is a respondent here, they might, of course, be admitted to participation in the proceeding upon reasonable terms; and *one of the most usual procedural rules is that an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding.* To this effect was the Commission's rule on the subject. It would seem then that, in the absence of clear legislative mandate to the contrary, the petitioners should not possess greater rights than other intervenors.

*Id.* at 498 (emphasis added). It is this language that Defendant argues supports its position in this litigation. Commerce Br. 4; ITC Br. 4-5. The court disagrees. Because the facts of *Vinson* are completely disparate from those presented here, the case has no application other than providing a mere recitation of the general rule mentioned above.

Similarly, the *Torrington* case is also distinguishable. In *Torrington*, a domestic producer of bearings challenged certain aspects of a final antidumping determination. *See Torrington*, 14 CIT at 56, 731 F. Supp. at 1074. One of the respondents then moved to intervene and simultaneously filed an answer to the complaint which interposed two affirmative defenses contesting the domestic producer's standing to litigate certain issues. *See id*. In response, the domestic producer moved to strike these affirmative defenses *on the grounds that the issue of*

Consol. Court No. 06-00334 Page 7

*standing was not in contention between the original parties*. *See id*. at 57, 731 F. Supp. at 1074. This Court held that the issue was indeed beyond the scope of the original litigation and could not be asserted by respondent in its position as intervenor. *See id*. at 57, 731 F. Supp. at 1075. Thus, the respondent impermissibly enlarged the *substantive issues* by asserting an affirmative defense that had not been raised between the original parties. *See Silver Reed Am., Inc. v. United States*, 8 CIT 342, 348, 600 F. Supp. 846, 850-51 (1984); *cf. Fuji Elect. Co., Ltd. v. United States*, 7 CIT 247, 248-49, 595 F. Supp. 1152, 1153-54 (1984).

In contrast, Schaeffler is not injecting new legal issues into the original litigation. *See Silver Reed Am., Inc.*, 8 CIT at 348, 600 F. Supp. at 850-51. The proposed legal theories and arguments currently before the court remain unchanged. In Plaintiffs' complaints, they assert the following arguments:

> 1. The [ITC's] decision to cumulate imports of ball bearings from the United Kingdom with imports of ball bearings from France, Germany, Italy, and Japan is unsupported by substantial evidence on the record or otherwise not in accordance with law.
>
> 2. The [ITC's] interpretation of current conditions of competition, specifically those involving the issue of substitutability, and its determination that such conditions are likely to prevail for the reasonable foreseeable future are unsupported by substantial evidence on the record or otherwise not in accordance with law.
>
> 3. The [ITC's] determination that the volume of subject imports in the reasonably forseeable future would likely be significant if the orders were revoked is unsupported by substantial evidence on the record or otherwise not in accordance with law.
>
> 4. The [ITC's] determination with regards to likely price effects if the orders were revoked is unsupported by substantial evidence on the record or otherwise not in accordance with law.
>
> 5. The [ITC's] determinations that the domestic ball bearings industry is currently vulnerable to material injury and that revocation of the antidumping

**Consol. Court No. 06-00334** Page 8

> duty orders would likely have a significant adverse effect on the domestic
> industry, and its basis for those determinations, are unsupported by substantial
> evidence on the record or otherwise not in accordance with law.

NSK Corp. & NSK Europe, Ltd. Compl. ¶ 12; NSK Corp. & NSK Ltd. Compl. ¶¶ 11, 15, 19, 23. Schaeffler reiterates these exact arguments in its motion. Pl.-Int. Mot. TRO & Prelim. Inj. 6. Therefore, the court views the principle of enlargement as better reserved for situations in which an intervenor adds new legal issues to those already before the court. Moreover, the fact that an intervenor brings additional entries to the litigation carries no weight with regard to enlargement. *See Silver Reed Am., Inc.*, 8 CIT at 349, 600 F. Supp. at 852; *see also Laclede Steel Co. v. United States*, No. 96-1029, 1996 WL 384010, at *3 (Fed. Cir. July 8, 1996) ("*Laclede*") (unpublished disposition). It is well settled that an intervenor may obtain a preliminary injunction to suspend liquidation of its own entries during the pendency of the litigation. *See, e.g.*, *Ceramica Regiomontana, S.A. v. United States*, 7 CIT 390, 396, 590 F. Supp. 1260, 1265 (1984) ("*Ceramica*"); *see also* USCIT R. 56.2.[2]

**B. Judicial Review of Injury Determinations**

Compared to the entry specific regime associated with customs jurisprudence, *see, e.g.*, *Daimlerchrysler Corp. v. United States*, 28 CIT 2105, 2106-07, 350 F. Supp. 2d 1339, 1341-42 (2004), the Court reviews the final results of an administrative ruling under § 1675 on the basis of specific determinations as set forth in plaintiff's summons and complaint. To establish the Court's jurisdiction over merchandise covered by a particular determination, a claimant must specify in its pleadings the individual determination that covers those entries. In most cases,

---

[2] In both *Laclede* and *Ceramica*, the intervenor's entries were subject to the same determination challenged by the plaintiffs. *See Ceramica*, 7 CIT at 392, 590 F. Supp. at 1262; *Laclede*, 1996 WL 384010, at *1.

there is only one determination under review and the country to which it applies is obvious. However, the sunset review challenged here is a collection of individual determinations for different countries published as a single administrative ruling. *See* §§ 1675(a), (c) & 1675a(a)(7); *see also Final Results*, 71 Fed. Reg. at 51,850. In such cases, the plaintiff's summons and complaint must guide the court as to which determinations, and therefore the entries covered by them, are subject to its final judgment.

> As the government explains,
>
> the [ITC] specifically assigned separate investigation numbers to each of the countries and products that were subject to the [its] reviews. . . . And, on the first page of its report, the [ITC] referred to its sunset decisions for the various bearings products from China, France, Germany, Italy, Japan, Singapore, and the United Kingdom as a set of "determinations," identifying each of those determinations by the individual investigation numbers for the products and countries involved. . . . Further, throughout the report, the [ITC] consistently used the singular word, "determination," when referring to its prior injury and sunset determination for any individual country, but used the plural of the word, "determination," when referring to multiple determinations for any grouping of countries. . . . [I]t issued individual determinations for all of the countries involved in the reviews, whether or not they were cumulated with other countries.

Def. Surreply 3-4; *see Final Results*, 71 Fed. Reg. at 51,850. Section 1675(c) instructs the government to initiate a five-year review to determine "whether revocation of the countervailing or antidumping duty *order* . . . would be likely to lead to continuation or recurrence of dumping. . . ." § 1675(c)(1) (emphasis added). The plain language of the statute and reference to "order" in the singular clearly suggests that sunset review determinations apply to individual antidumping orders. *See* § 1675(c). Furthermore, the fact that the ITC undertakes a review and cumulates merchandise from several countries to evaluate its aggregated effect on the domestic industry does not change a collection of individual injury determinations into a single determination for purposes of judicial review. *See Top-of-the-Stove Stainless Steel Cooking*

*Ware from Korea*, USITC Pub. 3485, Inv. Nos. 701-TA-267 & 731-TA-304 (Review) (Remand), at 2 n.8 (Feb. 2002) (limiting scope of remand determination based on which orders were appealed); *see also Gerald Metals, Inc. v. United States*, 132 F.3d 716, 717 (Fed. Cir. 1997). Under § 1675a(a)(7), "the [ITC] may cumulatively assess the *volume and effect* of imports of the subject merchandise from all countries" under review. § 1675a(a)(7) (emphasis added). The purpose of cumulation is to "eliminate inconsistencies in [ITC] practice and to ensure that the injury test adequately addresses *simultaneous unfair imports from different countries*." Trade and Tariff Act of 1984, H.R. Rep. 98-725, at 37, *reprinted in* 1984 U.S.C.C.A.N. 5127, 5164 (emphasis added). Again, nothing in the statute or legislative history detracts from the basic proposition that this Court reviews injury determinations on an individual basis.

In 1989, Commerce issued several antidumping orders on ball bearings from, *inter alia*, Italy, Germany, Japan, and the United Kingdom. *See AD Orders*, 54 Fed. Reg. 20,900-911. Plaintiffs have challenged the *Final Results* of the second sunset review, which concluded that removal of said antidumping orders would likely lead to material injury to the domestic industry. *See Final Results*, 71 Fed. Reg. at 51,850. Although the ITC decided to cumulate merchandise from several countries in its review under § 1675a(a)(7), Plaintiffs appealed only the determinations covering merchandise from Japan and the United Kingdom.[3] NSK Corp. & NSK Ltd. Compl. ¶¶ 1-5; NSK Corp. & NSK Ltd. Summons ¶¶ 1-2; NSK Corp. & NSK Europe, Ltd. Compl. ¶¶ 1-5; NSK Corp. & NSK Europe, Ltd. Summons ¶¶ 1-2. As an intervenor, Schaeffler wishes to dispute the continued imposition of antidumping duties on its imports from Italy,

---

[3] Plaintiffs also filed separate actions challenging each determination. NSK Corp. and NSK Ltd. filed a summons and complaint for the determination covering ball bearings from Japan, whereas NSK Corp. and NSK Europe Ltd. filed separate pleadings for the determination covering ball bearings from the United Kingdom.

Consol. Court No. 06-00334                                                                                    Page 11

Germany, and the United Kingdom.  Unfortunately, the only determinations currently before the court are those from Japan and the United Kingdom.  As a result, the court lacks authority to suspend liquidation of entries from Italy and Germany.  In this instance, Schaeffler should have filed a separate summons and complaint contesting the determinations as to Italy and Germany to properly bring these entries under the court's jurisdiction.  *See Ceramica*, 7 CIT at 395-96, 590 F. Supp. at 1264.  Therefore, Schaeffler's motion for a preliminary injunction is denied with respect to entries from Italy and Germany.

**C. Entries from the United Kingdom**

As previously mentioned, Plaintiffs appealed the ITC's determinations upholding the *AD Orders* covering entries from Japan and the United Kingdom.  Schaeffler intervened as a matter of right and has requested that the court suspend liquidation of its entries from the United Kingdom.  *See* 28 U.S.C. § 2631(j)(1)(B); USCIT R. 24 & 56.2.  Pursuant to Plaintiffs' summons and complaints, entries from the United Kingdom are properly before the court.  Consequently, Schaeffler may suspend liquidation on entries from the United Kingdom upon satisfying the traditional four factor test.  To obtain a preliminary injunction, the movant must demonstrate: (1) that it is likely to succeed on the merits at trial; (2) that it will suffer irreparable harm if preliminary relief is not granted; (3) that the balance of the hardships tips in the movant's favor; and (4) that a preliminary injunction will not be contrary to the public interest.  *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).

Other than having entries from separate determinations, Plaintiffs and Schaeffler are similarly situated with regard to the four factors.  Neither the ITC nor Commerce addressed the four factors in their briefs, confining their arguments to the issues discussed herein.  Because the

Consol. Court No. 06-00334							Page 12

legal issues are identical to those already established between the original parties, the court need not duplicate its analysis set forth in *NSK Corp.*, 31 CIT at __, Slip Op. 07-176.  The court holds that Schaeffler has made the necessary showing to obtain a preliminary injunction for its entries from the United Kingdom.

### III. CONCLUSION

For the foregoing reasons, Schaeffler's motion for a preliminary injunction is **DENIED** with regard to entries from Italy and Germany; and **GRANTED** with regard to entries from the United Kingdom.

Dated: February 15, 2008                                                            /s/ Judith M. Barzilay
         New York, NY                                                                     Judge Judith M. Barzilay

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                      Deputy Clerk