Slip Op. 11- 124

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| NSK CORPORATION, *et al.*, | |
| Plaintiffs, | |
| and | |
| FAG ITALIA S.p.A., *et al.*, | Before: Judith M. Barzilay, Senior Judge |
| Plaintiff-Intervenors, | Consol. Court No. 06-00334 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| THE TIMKEN COMPANY, | |
| Defendant-Intervenor. | |

## **OPINION**

[Plaintiffs' motion for writ of mandamus is denied.]

Dated: October 12, 2011

*Crowell & Moring LLP* (*Matthew P. Jaffe*, *Robert A. Lipstein*, and *Carrie F. Fletcher*), for Plaintiffs NSK Corporation, NSK Ltd., and NSK Europe Ltd.

*Sidley Austin LLP* (*Neil R. Ellis* and *Jill Caiazzo*), for Plaintiffs JTEKT Corporation and Koyo Corporation of U.S.A.

*Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP* (*Max F. Schutzman* and *Andrew T. Schutz*), for Plaintiff-Intervenors FAG Italia SpA, Schaeffler Group USA, Inc., Schaeffler KG, The Barden Corporation (U.K.) Ltd., and The Barden Corporation.

*Steptoe & Johnson* (*Herbert C. Shelley*, *Alice A. Kipel* and *Christopher G. Falcone*), for Plaintiff-Intervenors SKF Aeroengine Bearings UK and SKF USA, Inc.

*United States International Trade Commission*, *James M. Lyons* (General Counsel), *Neal J. Reynolds* (Assistant General Counsel for Litigation), and *David A.J. Goldfine*, Office of the General Counsel, for Defendant United States.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director; *Claudia Burke*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; of counsel, *Shana Hofstetter*, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for Defendant United States.

*Stewart and Stewart* (*Terence P. Stewart*, *Eric P. Salonen* and *Philip A. Butler*), for Defendant-Intervenor The Timken Company.

BARZILAY, Senior Judge:  Before the court is Plaintiffs' JTEKT Corporation, Koyo Corporation U.S.A., NSK Corporation, NSK Ltd., and NSK Europe Ltd. motion for a writ of mandamus to compel the U.S. Department of Commerce ("Commerce") to (1) instruct the U.S. Customs and Border Protection ("Customs") to terminate the suspension of liquidation for entries of ball bearings from the United Kingdom entered on or after August 25, 2010 and from Japan, entered on or after March 1, 2011; and (2) instruct Customs to refund with interest antidumping duty cash deposits for ball bearings from the United Kingdom entered on or after August 25, 2010 and from Japan, entered on or after March 1, 2011. Plaintiffs bring this action to enforce the court's judgment, which, according to Plaintiffs, requires the court to order Commerce to issue liquidation instructions and return all cash deposits for entries entered on or after the U.S. International Trade Commission's ("ITC") negative injury determination dates. The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). For the reasons set forth below, Plaintiffs' motion is denied.

# I. BACKGROUND

   This case has an extensive and contentious history.[1] This opinion recites only as much of

that history as is necessary to the issues at hand. Plaintiffs successfully challenged the ITC's

second sunset review determination covering ball bearings from the United Kingdom and Japan,

which, ultimately, resulted in the revocation of the underlying antidumping duty orders. *See*

*Certain Bearings From China, France, Germany, Italy, Japan, Singapore, and the United*

*Kingdom*, 71 Fed. Reg. 51,850 (Dep't of Commerce Aug. 31, 2006); *see also Ball Bearings and*

*Parts Thereof From Japan and the United Kingdom: Revocation of Antidumping Duty Orders*,

76 Fed. Reg. 41,761 (Dep't of Commerce July 15, 2011) ("*Revocation Notice*"). The court must

now consider what rights are owed to Plaintiffs as a result of the court's judgment.

   On August 25, 2010, the ITC filed its third remand determination in this case, concluding

(under protest) that revocation of the antidumping duty order covering ball bearings from the

United Kingdom would not be likely to lead to continuation or recurrence of material injury. *See*

*Third Remand Results*, Docket No. 221  (ITC Aug. 25, 2010). The court sustained the ITC's

determination with regard to bearings from the United Kingdom but remanded as to bearings

from Japan. *See NSK V*, 744 F. Supp. 2d 1359. On March 1, 2011, the ITC filed its fourth

remand determination, concluding (also under protest) that revocation of the antidumping duty

---

   [1] *See NSK Corp. v. United States*, 774 F. Supp. 2d 1296, 35 CIT ___ (2011) ("*NSK VI*")
(affirming fourth remand determination); *NSK Corp. v. United States*, 744 F. Supp. 2d 1359, 34
CIT ___ (2010) ("*NSK V*") (affirming in part and reminding in part third remand determination);
*NSK Corp. v. United States*, 34 CIT ___, 712 F. Supp. 2d 1356 (2010) ("*NSK IV*") (affirming in
part and remanding in part second remand determination); *NSK Corp. v. United States*, 33 CIT
___, 637 F. Supp. 2d 1311 (2009) ("*NSK III*") (remanding first remand determination for
agency's failure to provide substantial evidence and failure to comply with court's remand
instructions); *NSK Corp. v. United States*, 32 CIT ___, 593 F. Supp. 2d 1355 (2008) ("*NSK II*")
(denying motion for rehearing); *NSK Corp. v. United States*, 577 F. Supp. 2d 1322, 32 CIT ___
(2008) ("*NSK I*") (affirming in part and remanding in part second sunset review).

order on imports of ball bearings from Japan would not be likely to lead to a continuation or

recurrence of material injury. *See Fourth Remand Results*, Docket No. 250 (ITC Mar. 1, 2011).

On April 20, 2011, the court issued its final judgment sustaining the ITC's negative injury

determination in full. *See NSK VI*, 774 F. Supp. 2d 1296.

 Defendant-Intervenor, The Timken Company ("Timken") promptly appealed the court's

decision and also filed a motion with this court to stay the judgment pending appeal. *See Notice

of Appeal to the United States Court of Appeals for the Federal Circuit*, Docket No. 271 (Apr.

26, 2011); *Mot. for Stay of Execution of Final Judgment Pending Appeal*, Docket No. 272 (Apr.

26, 2011). The court entered a temporary stay of its judgment to review Timken's motion. *See

Order Entering Temporary Stay*, Docket No. 275 (Apr. 28, 2011). The court ultimately denied

the motion, vacated the temporary stay, and entered judgment. *See NSK Corp. v. United* States,

774 F. Supp. 2d 1300, 35 CIT __ (May 13, 2011) (denying Timken's motion to stay pending

appeal). Timken appealed the court's decision denying its motion. On appeal, the Federal Circuit

also entered a temporary stay of the judgment but, upon review, sustained the court's decision

denying the motion to stay. *See NSK Corp. v. United States*, 2011 WL 2648586 (Fed. Cir. July 6,

2011).

 At the administrative level, Commerce published a Timken notice on June 17, 2011,

notifying interested parties of a court decision not in harmony with the agency's determination.

*See Notice of Court Decision Not in Harmony With Continuation of Antidumping Duty Orders*,

76 Fed. Reg. 35,401 (Dep't of Commerce June 17, 2011) ("*Timken Notice*"); *see also Timken v.

United States*, 893 F.2d 337 (Fed. Cir. 1990) ("*Timken*"). In the notice, Commerce instructed

Customs to "suspend liquidation of all unliquidated entries of subject merchandise from Japan

and the United Kingdom . . . entered, or withdrawn from warehouse, . . . on or after July 11,

2005, the five-year anniversary date of the continuation of the orders." *Timken Notice*, 76 Fed. Reg. at 35.402. The notice stated that "all entries entered, . . . on or after July 11, 2005, that remain unliquidated and not deemed liquidated as of April 30, 2011,[2] will be suspended during the pendency of the appeals process so that they may be liquidated at the court-approved rate after a 'conclusive' court decision." *Id.*

On July 15, 2011, Commerce published a notice revoking the antidumping duty orders on ball bearings from the United Kingdom and Japan. *See Revocation Notice*, 76 Fed. Reg. 41,761. Commerce published the revocation 10 days after the Federal Circuit issued its decision on Timken's motion to stay. *Id.* Pursuant to the revocation, Commerce "discontinu[ed] all unfinished administrative reviews" and indicated that it would "not initiate any new administrative reviews of the orders." *Id.* Furthermore, Commerce instructed Customs to "discontinue the collection of cash deposits for estimated antidumping duties, effective July 16, 2011, which is 10 days after the Federal Circuit lifted the temporary stay." *Id.* Commerce then reiterated that, "[a]s explained in the Timken Notice and pursuant to *Timken*, *Hosiden*, and *Diamond Sawblades*, the suspension of liquidation on all entries of ball bearings from Japan and the United Kingdom entered or withdrawn from warehouse . . . on or after July 11, 2005, that remained unliquidated and not deemed liquidated as of April 30, 2011, will continue until there is a 'final and conclusive' court decision." *Id.* at 41,762-63.

Plaintiffs now challenge Commerce's continued suspension of liquidation and failure to

---

[2] April 30, 2011 is the effective date of the *Timken Notice*. *See Timken Notice*, 76 Fed. Reg. at 35,402. Under 19 U.S.C. § 1516a(c)(1), Commerce is required to publish notice of a court decision not in harmony with the agency's determination "within 10 days from the date of the issuance of the court decision." *Id.*; *see Timken*, 893 F.2d at 340. The court issued its judgment on April 20, 2011. *See NSK VI*, 774 F. Supp. 2d 1296. Although Commerce published the notice on June 17, 2011, the effective date for purposes of suspending liquidation is 10 days after the court issued its judgment.

refund cash deposits on entries that postdate the ITC's negative injury determinations.

## II. DISCUSSION

A writ of mandamus is an extraordinary remedy with three requirements: (1) defendant

must owe plaintiff a clear, nondiscretionary duty; (2) plaintiff must have no adequate alternative

remedies; and (3) the issuing court must be satisfied that the writ is appropriate under the

circumstances. *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004). For the following

reasons, mandamus is not appropriate in this case.

Plaintiffs claim that Commerce has failed to act on three clear, non-discretionary duties.

Pl. Br. 6-7. First, Plaintiffs contend that Commerce had a clear, non-discretionary duty to issue

revocation instructions on August 25, 2010 (U.K.) and March 1, 2011 (Japan). Pl. Br. 7-8.

Plaintiffs, then, assuming their first argument to be true, claim that Commerce had a clear, non-

discretionary duty to (1) issue liquidation instructions and (2) refund cash deposits on Plaintiffs'

entries entered on or after August 25, 2010 (U.K.) and March 1, 2011 (Japan). Pl. Br. 7.

Plaintiffs' arguments are unavailing given the statutory scheme and unique factual circumstances

of this case.

Plaintiffs first claim that Commerce had a clear, nondiscretionary duty under 19 U.S.C.

§ 1675(d)(2) to issue revocation instructions on the same day that the ITC issued its negative

determinations on August 25, 2010 (U.K..) and March 1, 2011 (Japan). Pl. Br. 7. This bold

assertion does not withstand scrutiny. The central difficulty with Plaintiffs' argument is that

although section 1675(d)(2) clearly directs Commerce to "revoke" an antidumping duty order

when the ITC issues a negative injury determination,  *id.*, the statute does not speak with equal

clarity on exactly *when* this must occur. Commerce must, of course, act within a reasonable time,

but Plaintiffs' claim that Commerce had a clear, nondiscretionary duty to revoke the

antidumping duty order on the same day as the ITC's negative injury determination is not

persuasive. At best the statute is silent, meaning Commerce has some interpretative discretion

(under the second step of *Chevron*[3]) in timing its revocation instructions. Commerce has, in turn,

promulgated a regulation that provides guidance on when Commerce typically issues revocation

instructions, 19 C.F.R. § 351.222(i)(1)(iii). Despite its seeming central relevance to Plaintiffs'

petition, Plaintiffs have chosen not to cite or discuss this regulation.

The regulation prescribes a 7-day time frame in which Commerce typically issues

revocation instructions following a negative determination by the ITC. This time period,

however, is subject to Commerce's discretion to "relax or modify its procedural rule adopted for

the orderly transaction of business before it when in a given case the ends of justice require

it.'" *PAM S.p.A. v. United States*, 463 F.3d 1345, 1348 (Fed. Cir. 2006) (quoting *Am. Farm Lines

v. Black Ball Freight Service*, 397 U.S. 532, 538-39 (1970)). Additionally, because the regulation

does not address the precise issue of when Commerce must revoke an order following a negative

injury determination issued under protest and subject to appeal, Commerce has additional

discretion to interpret its own regulations, which the court reviews deferentially to determine

whether the agency's approach is "plainly erroneous or inconsistent with the regulation. " *Am.

Signature Inc. v. United States*, 598 F.3d 816, 827 (Fed. Cir. 2010) (quoting *Reizenstein v.

Shinseki*, 583 F.3d 1331, 1335 (Fed. Cir. 2009)); *see also Auer v. Robbins*, 519 U.S. 452, 461

(1997).

Here, Commerce revoked the order on July 16, 2011, 10 days after the Federal Circuit

---

[3] The two-step framework provided in *Chevron U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984), governs judicial review of Commerce's interpretation of the antidumping statute. *Dupont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005). The court first considers whether Congressional intent on the issue is clear, and if not, the court next considers whether Commerce's interpretation is reasonable. *Id.*

lifted the temporary stay of this court's judgment. *See Revocation Notice*, 76 Fed. Reg. at 41,761.

Considering the procedural posture of this litigation (with a temporary stay preventing

Commerce from acting), Commerce's timing of the revocation after the Federal Circuit's denial

of  Timken's motion strikes the court as a reasonable application of 19 C.F.R. §

351.222(i)(1)(iii).

To the extent Plaintiffs rely on *Diamond Sawblades Mfrs. Coalition v. United States*, 626

F.3d 1374 (Fed. Cir. 2010) ("*Diamond Sawblades*"), as support for its argument that Commerce

had a clear, nondiscretionary duty to revoke the antidumping duty orders on a date certain, Pl.

Br. 7-8, the court is again unpersuaded. *Diamond Sawblades* involved a negative injury

determination that changed to an affirmative, whereas this case involves an affirmative injury

determination that changed to a negative. The distinction is important. In *Diamond Sawblades*,

the court explained that Commerce had to follow specific statutory guidelines (enumerating

clear, nondiscretionary duties) to implement the antidumping duty order, *see* 19 U.S.C.

§§ 1673d(d) and 1673e(a). *See Diamond Sawblades*, 626 F.3d at 1381. In this case, however, the

statute does not mandate *when* Commerce must revoke the order. *See* 19 U.S.C. § 1675(d)(2).

Under the statutory scheme at issue here, Commerce has no clear duty to issue revocation

instructions on a specific date let alone on the same day that the ITC publishes a negative injury

determination. *See id.* At a minimum, Commerce has at least 7 days in the ordinary course to

issue instructions revoking an antidumping duty order, *see* 19 C.F.R. § 351.222(i)(1)(iii), and

one would expect that the time period might reasonably expand, for the circumstances presented

here – a negative injury determination issued under protest and on appeal. Accordingly,

Plaintiffs' contention that Commerce had a clear, nondiscretionary duty to issue revocation

instructions on August 25, 2010 (U.K.) and March 1, 2011 (Japan) is unpersuasive.

The court next turns to Plaintiffs' principal argument that 19 U.S.C. § 1516a(c) and (e)

do not prevent Commerce from issuing liquidation instructions on entries that postdate the ITC's

negative determinations [August 25, 2010 (U.K.) and March 1, 2011 (Japan)]. Pl. Br. 9-12. In the

court's view, this argument lacks merit.

Section 1516a(c)(1) and (e) and the line of Federal Circuit decisions interpreting these

provisions establish a statutory scheme that does indeed prevent the court from providing the

relief requested by Plaintiffs. Section 1516a(c)(1) governs liquidation in accordance with an

agency determination. It provides that

> [u]nless . . . liquidation is enjoined by the court . . . entries of merchandise . . .
> covered by a determination . . . shall be liquidated in accordance with the
> determination . . . if they are entered . . . on or before the date of publication in the
> Federal Register . . . of a notice of a decision of the [Court of International Trade],
> or of the [Federal Circuit], not in harmony with that determination. Such notice of
> a decision shall be published within ten days from the date of the issuance of the
> court decision.

19 U.S.C. § 1516a(c)(1). Section 1516a(e), in turn, governs the liquidation of entries pursuant to

decisions of the Court and the Federal Circuit. It states that if

> the cause of action is sustained . . . by a decision of the [Court of International Trade]
> or of the [Federal Circuit] . . . . (1) entries of the merchandise of the character
> covered by the published determination of the Secretary, the administering authority,
> or the Commission, which is entered, or withdrawn from warehouse . . . after the date
> of publication . . . of a notice of the court decision . . . . shall be liquidated in
> accordance with the final court decision in the action.

19 U.S.C. § 1516a(e).

Therefore, when a reviewing court issues a final (non-interlocutory) decision that is not

in harmony with a contested agency determination, Commerce must publish notice of such a

decision in the Federal Register. 19 U.S.C. § 1516a(c)(1). Under *Timken*, the published notice

has the effect of suspending liquidation of the subject entries until there is a "final court

decision" under 19 U.S.C. § 1516a(e). *See Timken*, 893 F.2d at 341 ("§ 1516a(e) indicates that if

the CIT (or [the Federal Circuit]) issues such an adverse final decision, then all entries after

publication of notice of that adverse decision will be liquidated in accordance with the *final*, i.e.

*conclusive*, court decision in the action."); *Hosiden Corp. v. United States*, 85 F.3d 589, 591

(Fed. Cir. 1996) ("The Court of International Trade does not have discretion to require

liquidation before the final decision on appeal."); *Diamond Sawblades*, 626 F.3d at 1381 ("We

held that the effect of [Timken] notice, . . . is to suspend liquidation of the subject entries until

there is a final and conclusive court decision in the action, i.e., until judicial review proceedings

of the antidumping duty order have been completed."). A decision by the Court of International

Trade that has been appealed is not considered the "final court decision" under the statute. *See*

*Timken*, 893 F.2d at 341; *Hosiden Corp.*, 85 F.3d at 591; *Fujitsu General Am. v. United States*,

283 F.3d 1364, 1379 (Fed. Cir. 2002); *Diamond Sawblades*, 626 F.3d at 1381.

Here, Plaintiffs seek an order compelling Commerce to issue liquidation instructions at a

rate of zero on entries that postdate the ITC's negative determinations. As explained above, the

dates on which the ITC issued its negative determinations, August 25, 2010 and March 1, 2011,

are not the dates on which Commerce had a clear, non-discretionary duty to issue revocation or

liquidation instructions.

Section 1516a(e) controls liquidation following a court decision that is inconsistent with

the agency's determination. *See id.* This court's judgment was inconsistent with the ITC's

original affirmative determination. Because the judgment has been appealed to the Federal

Circuit, the subject entries, including those entered after August 25, 2010 and March 1, 2011, are

suspended by operation of law until the issuance of a *conclusive* court decision that fixes the

antidumping duty rates, if any, on the subject merchandise. *See, e.g.*, *Timken,* 893 F.2d at 341.

There is no conclusive court decision at this time. Accordingly, the court cannot order

Commerce to issue liquidation instructions, which reflect the revocation (i.e. no duties), when

binding authority mandates that Commerce suspend liquidation until a "final court decision" is

issued. *See id.* Plaintiffs have failed to establish a clear, nondiscretionary duty for Commerce to

issue liquidation instructions.

Plaintiffs also argue that Commerce has a duty to refund cash deposits on entries that

postdate the ITC's negative determinations. Pl. Br. 12-13. Plaintiffs fail to cite a statute,

regulation, case law, or other authority that would require the court to order Commerce to refund

cash deposits made on those entries. Pl. Br. 12-13. Instead, Plaintiffs request a refund of their

cash deposits based on undue financial hardship and the lack of an alternative remedy. Pl. Reply

Br. 4. This claim, however, does not establish a clear, nondiscretionary duty and therefore this

requirement for a writ of mandamus has not been met.

Moreover, Plaintiffs have an alternative remedy under the statute. If they prevail before

the Federal Circuit, all entries that have been suspended will be liquidated in accordance with

that final court decision. *See* 19 U.S.C. § 1516a(e). Likewise, all cash deposits will be refunded

with interest. *See* 19 U.S.C. § 1505(b).

The court has also concluded that mandamus is inappropriate under the circumstances.

Liquidation is the final computation or ascertainment of duties on an entry and normally cannot

be undone. *See* 19 C.F.R. § 159.1; *Diamond Sawblades*, 626 F.3d at 1380 ("The liquidation of

entries is normally irrevocable."). Ordering liquidation would be contrary to binding Federal

Circuit precedent, which sought to avoid "the yo-yo effect on liquidations that could result

absent suspension during the review process." *Id.*at 1380 n.3 (citation and quotation marks

omitted). Conversely, cash deposits can be refunded and present no irreparable consequences.

*See id.* ("[W]hile liquidation normally cannot be undone, the collection of cash deposits has no

irreparable consequences.").

### III. CONCLUSION

For these reasons, Plaintiffs' motion for a writ of mandamus is denied. It is so ordered.


Dated: October 12, 2011                               __/s/ Judith M. Barzilay_____
      New York, NY                                    Judith M. Barzilay, Senior Judge